UNITED STATES of America et al., Petitioners,

v.

EMPIRE GAS CORPORATION et al., Respondents.

No. 76 CV–64–W–4.

United States District Court, W. D. Missouri, W. D.

Aug. 9, 1976.

E. Eugene Harrison, Asst. U. S. Atty., Kansas City, Mo., for petitioners.

Harry A. Morris, Thomas E. King, Donald F. Loudon, of Morrison, Mitchell, Larson, King, Stamper & Bold, Kansas City, Mo., for respondents.

## ORDER

ELMO B. HUNTER, District Judge.

This is an action to enforce sixty-one subpoenas issued by the Federal Energy Administration (FEA) to Empire Gas Corporation (Empire) and sixty of its subsidiaries in order to complete an audit pursuant to FEA's regulatory scheme. Empire, a retail marketer of propane operating approximately 300 subsidiaries located in several states, is subject to FEA's Mandatory Petroleum Allocation and Price Regulations (10 C.F.R. §§ 210, 211 and 212).

Jurisdiction is alleged under Sections 206 and 211 of the Economic Stabilization Act of 1970, as amended, 12 U.S.C. § 1904 note, incorporated by reference in Section 5(a)(1) of the Emergency Petroleum Allocation Act

of 1973, as amended, 15 U.S.C. §§ 751 et seq. (1973), and upon Section 13(e)(2) of the Federal Energy Administration Act of 1974, 15 U.S.C. §§ 761 et seq., and regulations promulgated thereunder.

The subpoenas here in issue, served in October 1975, direct respondents to appear, testify, and produce various documents and records. Empire's subsequent motion to quash or suspend service of the subpoenas, filed with FEA's regional office, was denied. Empire continued to refuse compliance with the subpoenas and, on January 20, 1976, FEA brought this action for enforcement.

On April 29, 1976, the parties entered into a stipulation whereby counsel for Empire accepted service of the subpoena issued to Empire's parent corporation, as well as the subpoenas directed to sixty subsidiaries. On May 3, 1976, this Court ordered respondents to show cause why FEA's subpoenas should not be enforced, and return to that Order was filed May 12, 1976. At the hearing conducted on May 14, 1976, both parties presented evidence and respondents submitted a trial brief. Following petitioner's brief responding to respondents' contentions, filed on July 26, 1976, respondents filed a Motion to Certify Constitutional Issues to the Temporary Emergency Court of Appeals pursuant to § 211(c) of the Economic Stabilization Act of 1970, as incorporated by reference in § 5(a)(1) of the Emergency Petroleum Allocation Act of 1973.

*Jurisdiction*

The first issue to be determined herein is the jurisdiction of this Court to entertain the claims raised by the parties. Section 13(b) and (e) of the Federal Energy Administration Act, 15 U.S.C. § 772(b), (e), clearly authorize the Administrator of FEA or authorized agents to collect information and issue subpoenas, and Section 13(e)(2) of the Act, 15 U.S.C. § 772(e)(2) further provides:

Any appropriate United States district court may, in case of contumacy or refusal to obey a subpoena issued pursuant to this section, issue an order requiring the party to whom such subpoena is directed to appear before the Administration and to give testimony touching on the matter in question, or to produce any matter described in paragraph (1) of this subsection, and any failure to obey such order of the court may be punished by such court as a contempt thereof.

A further provision for judicial review, however, complicates the jurisdictional issue. Section 5(a)(1) of the Emergency Petroleum Allocation Act, as amended, 15 U.S.C. § 754(a)(1) (1973), incorporates by reference and applies to FEA's actions the judicial review provisions of Section 211 of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note. Section 211 creates a Temporary Emergency Court of Appeals with powers and jurisdiction of a Circuit Court of Appeals for the purposes of litigation brought under the Emergency Petroleum Allocation Act. Further, Section 211(c) limits the jurisdiction of United States District Courts as follows:

In any action commenced under this title in any district court of the United States in which the court determines that *a substantial constitutional issue exists,* the court shall certify such issue to the Temporary Emergency Court of Appeals. Upon such certification, the Temporary Emergency Court of Appeals shall determine the appropriate manner of disposition which may include a determination that the entire action be sent to it for consideration or it may, on the issues certified, give binding instructions and remand the action to the certifying court for further disposition. (emphasis supplied)

Thus, if respondents have raised a substantial constitutional issue in their opposition to the enforcement of FEA's subpoenas, this Court must certify such issue to the Temporary Emergency Court of Appeals.

■ Upon careful review of the record and evidence presented in this case, however, this Court has determined that no substantial constitutional issue exists. Respondents have challenged enforcement of the subpoenas on the ground that the regulations on which they are based are ambigu-

ous and arbitrary as applied, and that compliance with the subpoenas would be unduly burdensome, thus depriving respondents of due process of law. These constitutional arguments are without merit for the following reasons. First, this Court finds no ambiguity in the terms "firm," "seller," "reseller," and "retailer" as employed in the regulations, and further finds that FEA's Interpretation of May 28, 1976, removes any doubt which Empire may have entertained concerning the application of the regulations to its business operations.[1]

Moreover, the facts fail to support respondents' allegation of arbitrary or inconsistent application of FEA regulations to Empire and its subsidiaries; rather, the Court finds that although the investigation by FEA into possible price violations by Empire and its 300 subsidiaries has been interrupted and delayed over the course of two years, the evidence reveals neither arbitrary nor inconsistent application of the regulations. As for respondents' assertion that the regulations permit arbitrary application by FEA, it is of course significant that the applicability of the regulations to respondents cannot be determined until the information sought by subpoena is made available to the FEA investigators. In other words, the application of the definition of a "firm" to Empire—the basis of respondents' constitutional attack on the regulations—can be determined only on the basis of information which at all times has been available to Empire and its subsidiaries and access to which respondents attempt to deny petitioners.

Finally, respondents' assertion of the burden inherent in providing the subpoenaed documents and the resulting interruption in Empire's business operations fails to demonstrate a deprivation of due process of law, particularly in view of petitioners' willingness to make inspection of the documents at Empire's headquarters and make copies of any materials necessary for com-

pletion of the audit. Thus, respondents have failed to raise a substantial constitutional issue sufficient to require certification to the Temporary Emergency Court of Appeals and this Court has jurisdiction to determine enforceability of the subpoenas. See *Delaware Valley Apartment House Owners Ass'n. v. United States*, 350 F.Supp. 1144, 1149–50 (E.D.Pa.1973), aff'd 482 F.2d 1400 (Em.App.1973).

*Enforceability of Subpoenas*

 The power of the FEA to subpoena documents in the course of its investigations is a broad one, and it is sufficient for enforceability of its subpoenas that the inquiry is within the agency's authority, the demand is not too indefinite, and the information sought is reasonably relevant to a proper subject of inquiry. *United States v. Morton Salt Co.*, 358 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *Civil Aeronautics Board v. Hermann*, 353 U.S. 322, 77 S.Ct. 804, 1 L.Ed.2d 852 (1957); *Adams v. Federal Trade Commission*, 296 F.2d 861 (8th Cir. 1961), cert. denied 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83. These requirements clearly were met by the subpoenas sought to be enforced in this action.

Nevertheless, respondents have attempted to assert the alleged arbitrariness in the FEA regulatory scheme as a defense to enforceability of the subpoenas. The futility of this argument, however, is illustrated by the United States Supreme Court's holding in *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. at 214, 66 S.Ct. at 508, where subpoenas of the Federal Trade Commission were enforced despite a challenge on the ground that petitioner was not covered by the Fair Labor Standards Act. The Court stated:

We think, therefore, that the Courts of Appeals were correct in the view that Congress has authorized the Administra-

---

**1.** In addition, the Court notes that although Empire has appealed through agency procedures certain of the issues dealt with in the FEA Interpretation, the appeal contains no

claim of ambiguity in the regulations or inability to ascertain how the terminology of the regulations should be applied.

tor, rather than the District Courts in the first instance, to determine the question of coverage in the preliminary investigation of possibly existing violations; in doing so to exercise his subpoena power for securing evidence upon that question, by seeking the production of petitioners' relevant books, records and papers; and, in case of refusal to obey his subpoena, issued according to the statute's authorization, to have the aid of the District Court in enforcing it. No constitutional provision forbids Congress to do this.

■ Thus, determination of the applicability or validity of agency regulations is not a condition precedent to enforcement of an agency subpoena. Indeed, to find otherwise would disable the agency from rendering a complete decision on an alleged violation as Congress has directed, and would permit regulated parties an end run attack upon regulation whenever they found themselves blocked at the center. Such interference by the courts in every instance with agency proceedings is neither advisable nor permissible.[2]

It is further important to note at this point that this action arises after a delay of approximately one year in the audit necessary for FEA to initiate the compliance process. There has, as yet, been no determination of pricing violations by Empire or its subsidiaries, no remedial order issued by FEA, nor any administrative appeal by Empire challenging the validity of the remedial

order. Only by compliance with the subpoenas may Empire's status be determined, and only after exhaustion of available administrative remedies in the event of a violation will Empire's compliance with the FEA regulations be an appropriate subject for judicial review. See *Adams v. Federal Trade Commission*, 296 F.2d 861, 864 (8th Cir. 1961), cert. denied 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83 (1962); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1937).

■ Thus, the only remaining determination for this Court is whether the agency abused its discretion in issuing the subpoenas to Empire and its subsidiaries. No abuse of discretion is revealed by the evidence in this case. Rather, the information sought by subpoena is necessary to completion of the audit pursuant to the regulatory scheme, and the issuance of the subpoenas, under the circumstances, was neither premature nor unreasonable. Neither is this a case where sensitive constitutional rights are implicated upon compliance with the subpoena, nor is there any element of harassment where, as here, the subpoena was issued and enforced according to law. See *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. at 217, 66 S.Ct. 494. Finding no abuse of discretion in the issuance of the subpoenas, this Court has determined that the subpoenas are enforceable.

For all the foregoing reasons, therefore, it is

---

2. The enforceability of the subpoenas despite challenge to the regulations is further indicated by specific statutory provision. The judicial review section of the Economic Stabilization Act of 1970, incorporated by reference and made applicable to the Emergency Petroleum Price Allocation Act, provides:

The Temporary Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Temporary Emergency Court of Appeals, shall have exclusive jurisdiction to determine the constitutional validity of any provision of this title or of any regulation or order issued under this title. Except as provided in this section, no court, Federal or State, shall have jurisdiction or power to consider the constitutional validity of any provision of this title or of any such regulation or order, or to stay, restrain, enjoin, or set aside, in whole or in part, any

provision of this title authorizing the issuance of such regulations or orders, or any provision of any such regulation or order, or to restrain or enjoin the enforcement of any such provision.

Therefore, respondents' claim that FEA's subpoenas are unenforceable due to constitutional infirmities in the price regulations does not require that this Court refuse enforcement of the subpoenas on constitutional grounds. See *Refiners Ass'n v. Dunlop*, 486 F.2d 1388 (Em. App.1973); *United States v. Ohio*, 487 F.2d 936 (Em.App.1973); see also *Delaware Valley Apartment House Owners Ass'n v. United States*, 350 F.Supp. 1144, 1149–50 (E.D.Pa. 1973), aff'd 482 F.2d 1400 (Em.App.1973). Nothing in the statute indicates an intention to deprive the District Courts of their power to enforce agency subpoenas, and such an intention will not be inferred.

ORDERED that respondents' Motion to Certify Constitutional Issues to the Temporary Emergency Court of Appeals is denied. It is further

ORDERED that respondents appear before petitioners and give testimony as required by the subpoenas, and that respondents make available for inspection and copying at the headquarters of Empire Gas Company all documents, records, and materials required by the subpoenas.