Murray **ANDERSON** et al., on behalf of themselves and others similarly situated, Plaintiffs,

v.

John T. **DUNLOP** et al., Defendants.

Civ. A. No. 1621–73.

United States District Court,
District of Columbia.

Aug. 24, 1973.

Jerry S. Cohen, Herbert E. Milstein, Michael D. Hausfeld, Washington, D. C., Harold E. Kohn, Philadelphia, Pa., for plaintiffs.

Irving Jaffe, Acting Asst. Atty. Gen., William E. Nelson, William C. White, Allen W. Hausman, Dept. of Justice, Washington, D. C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PARKER, District Judge.

This cause came before the Court on August 22, 1973 on Plaintiffs' Motion for Preliminary Injunction. The Court, having considered plaintiffs' and defendants' memoranda, the affidavits and statements submitted and having heard argument of counsel, makes the following Findings of Fact and enters the following Conclusions of Law:

*Findings of Fact*

1. Plaintiffs are service station dealers selling retail gasoline under the brand name of a major gasoline supplier pursuant to agreements with said suppliers. They bring this action on behalf of themselves and a class composed of all other dealers similarly situated.

2. Pursuant to Section 203 of the Economic Stabilization Act of 1970, as amended (Public Law 91–379, 84 Stat. 799, August 15, 1970; Public Law 92–210, 85 Stat. 743, December 22, 1971; Public Law 93–28, April 30, 1973) (Act), the President, on August 15, 1971, established a freeze on prices, rents, wages and salaries for a limited period and established the Cost of Living Council (Council).

3. Defendants are members of the Council and were appointed by the President pursuant to Executive Order 11695.

4. Among the objectives of the Act and Cost of Living Council Regulations which are pertinent to this case are to moderate the rate of inflation which has existed in the United States during the first six months of 1973; to continue expansion of the United States economy to fulfill its potential with further increases in employment; and to reduce long run inflationary forces.

5. In response to sharply rising domestic crude oil and wholesale and retail gasoline prices in April 1973, the Director of the Council ordered his staff to study the subject and to make policy recommendations designed to alleviate these problems.

6. On July 18, 1973, the President declared that among the general policy considerations to be applied in promulgating the current Phase IV price control regulations are the following: That prices be permitted to rise as much as costs rise, in dollars per unit of output without any profit margin on the additional costs; and that Phase II exemptions for firms with sixty employees or fewer be repeated in Phase IV.

7. A study was made and recommendations for regulations were submitted to the Director and reviewed and approved by the President's Oil Policy Committee and subjected to staff review within the Executive Branch.

584

These proposed regulations were published in the Federal Register, for comment on July 20, 1973. On August 17, 1973 the Council issued Phase IV Oil Regulations.

8. Plaintiffs and the class are the only class of retailers employing sixty or fewer individuals who are not exempt from the regulations.

9. There is no factual or statistical information or material justifying the failure to make the small business exemption under the regulations applicable to plaintiffs and the class.

10. There is no rational relationship between the objectives of the regulations and the denial to plaintiffs and the class of their small business exemption.

11. All segments of the economy and all other classes of retailers are allowed under the regulations to pass through increased costs on a dollar for dollar basis with the exception of plaintiffs and the class.

12. Plaintiffs and the class have been singled out from among all other classes in that they must absorb all their non-product cost increases since January 10, 1973.

13. Plaintiffs and the class have been singled out from all other classes and in particular, all petroleum firms, in that they must absorb all product cost increases after August 1, 1973.

14. Plaintiffs and the class are the only class whose principal supplier. is allowed to pass on his costs both in product and otherwise to Plaintiffs and the class while they, in turn, may not pass on such costs in their sales to the general public.

15. The Phase IV January 10, 1973, date for the establishment of price margins for plaintiffs and the class is an arbitrary date, bearing no reasonable relationship to the ends sought to be achieved under the Regulations.

16. The application of Subpart L of the August, 1973 Oil Regulations to plaintiffs and the class would require

plaintiffs and substantial members of the class to go out of business or otherwise sustain substantial and severe economic injury.

17. The establishment of a refiner-retailer class within Subpart L, with separate and distinct regulations applicable thereto, has no rational foundation and confers a competitive advantage upon said class not available to plaintiffs and the class.

18. Establishment of a refiner-retailer class within Subpart L is inconsistent with the objective of the Act and the Regulations.

19. Requiring plaintiffs to exhaust their administrative remedies would result in irreparable harm, in that in this case, time is crucial to protect the rights of plaintiffs and the class.

### Conclusions of Law

1. This Court has jurisdiction over this action pursuant to Section 211 of the Economic Stabilization Act, as last amended by P.L. 93–28 (April 30, 1973),

2. Venue is proper.

■ 3. Subpart L of the Phase IV Oil Regulations as applied to plaintiffs and the class is arbitrary and capricious within the meaning of the Act.

4. Subpart L as applied to plaintiffs and the class discriminates against plaintiffs and the class and violates the due process clause of the Fifth Amendment.

5. The provisions and regulations of Subpart L as applied to plaintiffs and the class are arbitrary and discriminatory and bear no rational relationship to the ends sought to be achieved by the Act or of Phase IV regulations in general and, therefore, violate the due process clause of the Fifth Amendment.

■ 6. Plaintiffs have made a sufficiently strong showing that they are likely to prevail on the merits of this suit.

7. The preliminary injunction should be granted.